UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 20-40631 |
| Scott Allyn Simons, | Chapter 7 |
| Debtor. | |

| | |
|---|---|
| Nationwide Judgment Recovery, Inc., | |
| Plaintiff, | Adv. Case No. 21-04027 |
| v. | |
| Scott Allyn Simons, aka ZeekRewards, | |
| Defendant. | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At Minneapolis, Minnesota, November 9, 2021.

On August 10, 2021, and September 14, 2021, the Court heard oral argument on Defendant Scott Simons' Motion for Summary Judgment. Defendant is the debtor in the main Chapter 7 bankruptcy case. Plaintiff Nationwide Judgment Recovery, Inc., an unsecured judgment creditor, opposes the Motion and requests entry of summary judgment in its favor. Nathan Hansen appeared for Defendant and Jonathon Nelson appeared for Plaintiff. The Court took the matter under advisement and it is now ready for decision.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Federal Rule of Bankruptcy Procedure 7001, and Local Rule 1070–1. This is a core proceeding within the

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *11/09/2021*
Tricia Pepin, Clerk, by HJ

meaning of 28 U.S.C. § 157(b)(2)(A) & (I).  Venue is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

## INTRODUCTION

This adversary proceeding arises from a final judgment entered against Defendant on August 14, 2017 (the "Final Judgment"), in the United States District Court for the Western District of North Carolina (the "District Court") for the fraudulent transfer of Ponzi scheme funds in violation of the North Carolina Uniform Fraudulent Transfer Act ("NCUFTA").[1] Defendant was a "net winner" in the underlying Ponzi scheme.

Plaintiff commenced this adversary proceeding to except Defendant's Final Judgment debt from discharge pursuant to 11 U.S.C. § 523(a)(19), which provides an exception to discharge for debts arising from securities violations.  Defendant moves for summary judgment, asserting that the Complaint fails to allege that he violated any securities laws or that he bought or sold any securities.  Plaintiff opposes the motion and requests entry of summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56(f), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

There are two issues before the Court.  First, whether a debt traceable to a securities law violation that was committed by a non-debtor third party falls within the scope of Section 523(a)(19).  Second, whether Defendant's Final Judgment debt is for common law fraud, deceit, or manipulation in connection with the purchase or sale of any security.

For the reasons discussed below, and under the facts of this case, the Court concludes that Section 523(a)(19)(A)(i) does not apply to a debtor that has not been found to have violated securities laws.  The Court also concludes that Defendant's Final Judgment debt is not a debt in

---

[1] N.C. Gen. Stat. § 39-23.4(a)(1).

2

connection with the purchase or sale of any security. Thus, Defendant's Motion is granted and Plaintiff's request for entry of summary judgment in its favor is denied.

## BACKGROUND AND PROCEDURAL HISTORY

The Court will provide a brief overview of the relevant facts and background for deciding this Motion. For a more detailed recitation of the Ponzi scheme's operations, the Court refers to the Summary Judgment Order issued in the underlying receivership action by the Honorable Graham C. Mullen, United States District Judge for the Western District of North Carolina.[2]

**A.    SEC Action**

On August 17, 2012, the Securities and Exchange Commission ("SEC") filed an action against Rex Venture Group, LLC ("RVG") and its principal Paul Burks (the "SEC Action").[3] Mr. Burks and other insiders used RVG to operate a large scale Ponzi and pyramid scheme through ZeekRewards.com ("ZeekRewards").[4] The SEC alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, and sought to obtain injunctive and monetary relief, shut down the Ponzi scheme, freeze assets, and appoint a receiver.[5] RVG consented to entry of judgment in favor of the SEC, and the District Court entered consent judgments against RVG and Mr. Burks enjoining them from violating federal securities laws.[6] <u>Defendant was not a defendant or otherwise a participant in the SEC Action</u>.

**B.    Clawback Action**

On August 17, 2012, the District Court appointed Kenneth Bell as receiver of the RVG estate (the "Receiver") pursuant to an Agreed Order Appointing Temporary Receiver and

---

[2] Compl., Dkt. 1, Ex. C. The operations of the Ponzi scheme are convoluted and remain unclear from the record before the Court.
[3] Pl.'s Mem. Opp'n, Dkt. 11, Ex. F.
[4] Compl. Ex. C, at 2.
[5] Id.
[6] Id.

3

Freezing Assets (the "Agreed Order").[7] The Agreed Order authorized the Receiver to initiate proceedings to avoid fraudulent transfers, disgorge profits, impose constructive trusts, and pursue any other legal or equitable relief necessary and appropriate to preserve and recover RVG's assets for the benefit of the estate.[8]

On February 28, 2014, the Receiver filed a clawback action in the District Court asserting claims against Defendant and others for the fraudulent transfer of RVG funds in violation of the NCUFTA, common law fraudulent transfer, and for the imposition of a constructive trust (the "Clawback Action").[9] <u>The Receiver did not allege or pursue any securities violations.</u> The Clawback Action was brought against certain named defendants and a group of "net winner" defendants (the "Net Winner Class"). The Net Winner Class consisted of individuals who received more money from the Ponzi scheme (in the form of profit payments, commissions, bonuses, or any other payments), than they paid into the Ponzi scheme (for the purchase of bids, subscriptions, memberships, or other fees).[10] Defendant was a Net Winner Class member; he paid $2,846.20 into the Ponzi scheme and received net winnings of $142,194.29.[11]

The Receiver sought a declaratory judgment against the Net Winner Class determining that the net winnings were fraudulent transfers from the Ponzi scheme that must be disgorged and subject to a constructive trust.[12] The Receiver also sought judgment against the Net Winner Class in the amount of their net winnings derived from the Ponzi scheme.[13] There was no dispute in the Clawback Action that ZeekRewards operated as a Ponzi scheme.[14]

---

[7] *Id.* 2–3.
[8] *Id.* 3.
[9] *Id.*
[10] *Id.*
[11] Compl. Ex. B, at 2.
[12] *Id.* Ex. C, at 19.
[13] *Id.*
[14] *Id.* 20.

4

On November 29, 2016, the District Court entered an order granting the Receiver's Motion for Partial Summary Judgment Against the Net Winner Class (the "Summary Judgment Order").[15] The District Court applied a Ponzi scheme presumption to find that RVG, through ZeekRewards, made transfers with an actual intent to defraud creditors and concluded that the transfers of RVG funds were avoidable fraudulent transfers under the NCUFTA.[16] Pursuant to the NCUFTA, receivers may avoid transfers made by a debtor with "intent to hinder, delay, or defraud any creditor of the debtor."[17] The District Court held that Defendant and the other Net Winner Class members violated the NCUFTA and imposed a constructive trust.[18]

On August 14, 2017, the District Court entered Final Judgment against Defendant in the amount of $190,959.94, comprised of $142,194.29 in net winnings and $48,765.65 in prejudgment interest.[19] On December 16, 2019, the successor receiver of the RVG estate assigned a portfolio of judgments against certain Net Winner Class members, including Defendant, to Plaintiff.[20]

C.   **Bankruptcy Case**

Defendant filed for Chapter 7 relief under the Bankruptcy Code on March 3, 2020.[21] On Schedule E/F, Defendant listed Plaintiff as a general unsecured judgment creditor with a claim for $190,959.00.[22] On June 4, 2020, the Chapter 7 Trustee filed a Notice to File Claims, informing creditors that payment of a dividend appeared possible and instructing them to file

---

[15] Compl. Ex. C.
[16] *Id*. 21–25.
[17] N.C. Gen. Stat. § 39-23.4(a)(1).
[18] Compl. Ex. C, at 25–27.
[19] *Id.* Ex. A.
[20] *Id.* Ex. E.
[21] Case No. 20-40631, Dkt. 1.
[22] *Id.* 25.

5

proofs of claim by September 8, 2020.[23]  Plaintiff did not file a proof of claim in the main bankruptcy case.

On March 31, 2021, Plaintiff commenced this adversary proceeding to except Defendant's Final Judgment debt from discharge.[24]  The Complaint asserts one count for relief pursuant to Section 523(a)(19).[25]  At the time Plaintiff filed its Complaint, the balance of the Final Judgment totaled $197,145.32.[26]  The Complaint refers to the Final Judgment against Defendant for violating the NCUFTA as the relevant judgment upon which Plaintiff bases its claim for relief.  Although the Complaint and Plaintiff's subsequent filings attempt to tie the Clawback Action to the SEC Action, the Complaint does not allege that <u>Defendant</u> violated any securities laws or bought or sold securities.

Defendant filed his Answer on April 30, 2021.[27]

Defendant filed this Motion on July 12, 2021.[28]  Plaintiff filed a response in opposition on July 23, 2021, and requested entry of summary judgment in its favor.[29]  The Court first held oral argument on August 10, 2021, and continued the matter to allow the parties time to submit additional evidence as to whether the transactions at issue were in connection with the purchase or sale of securities.  Plaintiff filed an affidavit on September 7, 2021 (the "Affidavit").[30]  Defendant did not submit any additional filings.  The Court held a second day of oral argument on September 14, 2021, and took the matter under advisement.

---

[23] *Id.*, Dkt. 13.
[24] Compl.
[25] *Id.* ¶¶ 20–32.
[26] *Id.* ¶ 6.
[27] Answer, Dkt. 7.
[28] Def.'s Mot. Summ. J., Dkt. 9.
[29] Pl.'s Mem. Opp'n.
[30] Emery Aff., Dkt. 14.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] Allegations supported only by the nonmoving party's own conclusions are insufficient to show there is a genuine issue for trial.[32] In ruling on a motion for summary judgment, courts "must view the evidence and inferences that reasonably may be drawn from the evidence in the light most favorable to the nonmoving party."[33]

Pursuant to Rule 56(f)(1), courts may grant summary judgment in favor of a nonmovant after giving notice and a reasonable time to respond.[34] Plaintiff did not file a cross-motion for summary judgment. Instead, Plaintiff requested entry of summary judgment in its memorandum of law in opposition to Defendant's Motion.[35] At oral argument on August 10, 2021, the Court gave notice that it would consider Plaintiff's request for summary judgment. Defendant did not object, and the Court continued the hearing to September 14, 2021.

The parties agree that there are no material facts in dispute and that this matter is ripe for summary judgment.

## DISCUSSION

The Complaint asserts one count for relief pursuant to Section 523(a)(19) and seeks to except Defendant's Final Judgment debt from discharge. At various points during oral argument

---

[31] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[32] *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016).
[33] *Id.*
[34] Fed. R. Civ. P. 56(f)(1).
[35] Pl.'s Mem. Opp'n 21.

and in their briefing, both parties indicated that there may have been other causes of action available to Plaintiff to except the Final Judgment debt from discharge under Section 523. Those actions are now time barred.

Defendant moves for summary judgment, arguing that the Complaint fails to plead that he violated any securities laws or bought or sold any securities, rendering Section 523(a)(19) inapplicable and entitling him to judgment as a matter of law.

Plaintiff argues that the Final Judgment debt relates back to the SEC Action and, as a result, is for a violation of securities laws. In the alternative, Plaintiff claims that the Final Judgment debt resulted from common law fraud, deceit, or manipulation in connection with Defendant's purchase or sale of securities.

A. **Section 523(a)(19)**

It is well settled that exceptions to discharge should be narrowly construed in a debtor's favor.[36] Plaintiff bears the burden of establishing by a preponderance of the evidence that Defendant's debt is nondischargeable.[37]

Section 523(a)(19) provides an exception to discharge for securities violations. Debts are nondischargeable under Section 523(a)(19) if two conditions are met. First, the debt is for the violation of certain federal or state securities laws or regulations, or is for "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security."[38] Second, and in relevant part for this adversary proceeding, the debt results before, on, or after the petition date from a judgment.[39]

---

[36] *Luebbert v. Glob. Control Sys., Inc.* (*In re Luebbert*), 987 F.3d 771, 781 (8th Cir. 2021) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).
[37] *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).
[38] 11 U.S.C. § 523(a)(19)(A)(i)–(ii).
[39] 11 U.S.C. § 523(a)(19)(B)(i).

Section 523(a)(19) incorporates by reference Section 3(a)(47) of the Exchange Act, which in relevant part defines Securities Laws to include the Securities Act and the Exchange Act.[40] The Bankruptcy Code broadly defines the term "security."[41]

**B.** **Section 523(a)(19)(A)(i)**

Defendant's argument on the issue of whether Section 523(a)(19)(A)(i) applies is straightforward. Defendant asserts that because the Complaint does not allege that he violated any securities laws, this subsection does not apply.

Plaintiff's argument is less straightforward. Plaintiff claims that the Final Judgment relates back to the SEC Action and the consent judgments entered against RVG and Mr. Burks. Plaintiff's theory is that because the Summary Judgment Order determined that RVG's transfers of Ponzi scheme funds were fraudulent under the NCUFTA, and since the SEC Action that shut down ZeekRewards for violating federal securities laws led to the Clawback Action, Defendant's debt is for a violation of securities laws.

It is undisputed that Plaintiff has a judgment against Defendant for fraudulent transfers of funds in violation of the NCUFTA. The Clawback Action, however, did not allege or pursue any violations of securities laws or regulations. The SEC Action did not involve Defendant in any way, and Plaintiff's Complaint does not allege that Defendant violated any securities laws resulting in a final judgment, order, consent decree, et cetera. The Complaint is clear that the request for relief arises from the Summary Judgment Order and Final Judgment.

To the Court's knowledge, the issue of whether a debt traceable to a securities law violation that was not committed by a debtor falls within the scope of Section 523(a)(19) is a matter of first impression in the Eighth Circuit. There is also a circuit split on the issue.

---

[40] 11 U.S.C. § 523(a)(19)(A)(i).
[41] *See generally* 11 U.S.C. § 101(49).

9

Plaintiff claims that a debtor does not need to be personally liable for a securities law violation, so long as a securities law violation led to the debt at issue. Plaintiff urges the Court to follow the Eleventh Circuit's decision of *In re Lunsford*.[42]

In *Lunsford*, an arbitrator determined that the debtor violated the Mississippi Securities Act by offering and selling an unregistered security and by making an offer containing untrue statements.[43] The state court confirmed the arbitration award, and the appellee obtained a judgment against the debtor for violations of state securities laws.[44] After the debtor filed for bankruptcy, the appellee commenced an adversary proceeding to except the debt from discharge under Section 523(a)(19).[45]

The debtor in *Lunsford* attempted to argue that his debt arose from a third-party violation, but the bankruptcy court held that the arbitration award, as confirmed by the state court, was for a violation of securities laws and excepted from discharge pursuant to Section 523(a)(19).[46] The district court affirmed and concluded that Section 523(a)(19) applies irrespective of a debtor's conduct.[47]

On appeal, the Eleventh Circuit affirmed the bankruptcy court's determination that the debtor himself violated securities laws, and also concluded that the scope of Section 523(a)(19) is not limited to debts arising from a debtor's own violation of securities laws.[48] The Eleventh Circuit reasoned that the text and structure of Section 523(a)(19) prevents discharge irrespective of debtor conduct, so long as the debt is caused by a securities violation.[49]

---

[42] *Lunsford v. Process Techs. Servs., LLC (In re Lunsford)*, 848 F.3d 963 (11th Cir. 2017).
[43] *Id.* at 965–66.
[44] *Id.* at 965.
[45] *Id.*
[46] *Id.* at 965–66.
[47] *Id.* at 966.
[48] *Id.* at 967–69.
[49] *Id.* at 968 ("The whole text establishes that section 523(a)(19)(A) precludes discharge regardless of whether the debtor violated securities laws as long as the securities violation caused the debt.")

The Eleventh Circuit represents the minority view on this issue. The Ninth and Tenth Circuits arrived at a contrary conclusion, determining that a debt traceable to a securities law violation committed by a non-debtor is not subject to Section 523(a)(19).[50]

In the Ninth Circuit case of *In re Sherman*, the SEC brought an enforcement action against certain companies that led to the appointment of a receiver.[51] The debtor was an attorney who represented some of the defendants in the enforcement action.[52] As part of the enforcement action, the receiver ordered the debtor to disgorge certain sums of money he received and retained, but did not earn, in a separate contingency case.[53] The SEC conceded that the debtor did not commit any securities violations.[54]

The debtor in *Sherman* filed for Chapter 7 bankruptcy relief. In a subsequent adversary proceeding, the debtor sought a declaratory judgment finding that the debt to the SEC resulting from the disgorgement order did not arise from a violation of securities laws and had been discharged notwithstanding Section 523(a)(19).[55] The bankruptcy court granted summary judgment in the debtor's favor, concluding as a matter of law that the SEC disgorgement order did not arise from the debtor's violation of a securities law.[56] The district court reversed, adopting a broad interpretation of Section 523(a)(19).[57]

On appeal, the Ninth Circuit reversed and held that Section 523(a)(19) only prevents the discharge of a debt for a securities violation when the debtor is directly responsible for the

---

[50] *Okla. Dep't of Sec. v. Wilcox* (*In re Wilcox*), 691 F.3d 1171 (10th Cir. 2012); *Sherman v. SEC* (*In re Sherman*), 658 F.3d 1009 (9th Cir. 2011), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013); *see* 4 Collier on Bankruptcy ¶ 523.27[1] (16th ed. 2021) ("Section 523(a)(19) must be read narrowly and applied only to debtors who have been found to have violated securities laws.").
[51] *In re Sherman*, 658 F.3d at 1010.
[52] *Id.*
[53] *Id.*
[54] *Id.* at 1010–11.
[55] *Id.* at 1011.
[56] *Id.*
[57] *Id.*

11

violation.[58] The Ninth Circuit determined that Section 523(a)(19)(A) should be read as if it said a debt will not be discharged if it "is for the violation by the debtor" rather than if it "is for the violation by the debtor or anyone else."[59] Further, the Ninth Circuit reasoned that a broad interpretation of Section 523(a)(19) would extend the exception to cases "where the debtor was unwittingly involved with, and unknowingly received benefits from, a wrongdoer."[60] The Ninth Circuit then relied on the Supreme Court's maxim of interpreting exceptions to discharge narrowly and strictly construing Section 523 against objecting creditors and liberally in favor of debtors.[61]

The Ninth Circuit found further support in the legislative history of Section 523(a)(19), which was enacted as part of the Sarbanes-Oxley Act to respond to concerns that the Bankruptcy Code allowed wrongdoers to except from discharge debts under judgments or settlements based on securities fraud and other securities violations.[62] The Ninth Circuit determined that one of the reasons for enacting Section 523(a)(19) was to target wrongdoers guilty of securities violations to ensure that judgments for such violations are treated like judgments for fraud under the Bankruptcy Code.[63] The Ninth Circuit held that debtors who received funds derived from a securities violation remain entitled to discharge of a resulting disgorgement order.[64]

The Tenth Circuit case of *In re Wilcox* presents similar facts and circumstances to this adversary proceeding. There, a non-debtor pled guilty to claims related to operating a Ponzi scheme in violation of Oklahoma state securities laws.[65] The debtors, early investors in the

---

[58] *Id.* at 1010.
[59] *Id.* at 1012–13.
[60] *Id.* at 1014.
[61] *Id.* at 1015–16.
[62] *Id.* at 1016–17.
[63] *Id.* at 1016.
[64] *Id.* at 1019.
[65] *In re Wilcox*, 691 F.3d at 1173.

Ponzi scheme, were sued along with other early investors by the Oklahoma Department of Securities to recover funds distributed in the Ponzi scheme on grounds of fraudulent transfer, unjust enrichment, and equitable lien.[66] The Oklahoma Department of Securities moved for summary judgment on the ground of unjust enrichment.[67] The state court granted summary judgment and required the debtors to repay profits derived from the Ponzi scheme.[68]

The debtors then filed for bankruptcy, and the Oklahoma Department of Securities brought an adversary proceeding to except the judgment debt from discharge under Section 523(a)(19).[69] The Oklahoma Department of Securities argued that the state court judgment against the debtors qualified as a judgment for a violation of securities laws, because the disgorgement resulted from the Ponzi scheme's principal's violation of securities laws.[70] The bankruptcy court agreed, and the district court affirmed.[71]

On appeal, the Tenth Circuit began its analysis by stating the fact that the judgment against the debtors required them to repay profits distributed from the Ponzi scheme (i.e., net winnings).[72] The state court made it clear that the debtors were not charged with securities violations, but rather unjust enrichment resulting from another's violation of securities laws.[73] Thus, the debtors' liability was not for a violation of securities laws.[74]

Like the Ninth Circuit, the Tenth Circuit relied on the legislative history of Section 523(a)(19). The Tenth Circuit cited the early language of the subsection, which excepted from

---

[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.* at 1174.
[71] *Id.* at 1173.
[72] *Id.* at 1174.
[73] *Id.* at 1175.
[74] *Id.*

13

discharge a debt that "arises under a claim relating to" securities violations.[75] Congress later changed the language to its current form, which excepts from discharge a debt that "is for" securities violations.[76] The Tenth Circuit reasoned that Congress intended to "penalize the perpetrators of such schemes by denying them relief from their debts."[77] As a matter of policy, the Tenth Circuit determined that adopting a broad interpretation of Section 523(a)(19) would "impose the heavy penalty of nondischargeability on violators and nonviolators alike."[78] As with the debtor in *Sherman*, the debtors in *Wilcox* were not necessarily innocent in acquiring the funds they were ordered to disgorge, but the debtors' level of culpability was irrelevant under Section 523(a)(19) because they were not accused of any securities violations.[79]

The Court finds the reasoning of the Ninth and Tenth Circuits to be persuasive and agrees that only a debt traceable to a securities law violation committed by a debtor is subject to Section 523(a)(19). Plaintiff attempts to add nuance that does not exist in the plain language, advocating for an interpretation that "any violation" of securities laws is sufficient when the statute only provides for "the violation" of securities laws. The basic question is whether the underlying judgment is "for the violation" of any securities laws. Here, the Final Judgment did not result from the SEC Action, but from an entirely different action. The Summary Judgment Order and Final Judgment directs Defendant to repay his net winnings from the Ponzi scheme because the transfers were fraudulent under the NCUFTA, and not because Defendant violated any securities laws.

---

[75] *Id.*
[76] *Id.*
[77] *Id.* at 1175–76 (emphasis in original).
[78] *Id.* at 1176 ("That Congress intended such an extreme result is evident neither in the text of the statute nor in the historical record.").
[79] *Id.*

Plaintiff reads Section 523(a)(19) too broadly.  As a matter of policy, if Section 523(a)(19) is construed to encompass debts traceable to a securities violation committed by a non-debtor, it could swoop up innocent debtors and preclude the discharge of debts for securities violations committed by others.  And the fact that courts must construe exceptions to discharge narrowly and in favor of a debtor adds additional weight to this conclusion.

Bearing these considerations in mind, the Court finds that Defendant's Final Judgment debt is not for the violation of any securities laws.  Thus, Section 523(a)(19)(A)(i) does not apply in this adversary proceeding.[80]

## C.     Section 523(a)(19)(A)(ii)

The remaining issue is whether Defendant's Final Judgment debt is for common law fraud, deceit, or manipulation in connection with the purchase or sale of any security.

Defendant's argument is once again straightforward.  Defendant asserts that because the Complaint does not plead that he bought or sold any securities, there is no evidence he bought or sold any securities, and the Summary Judgment Order makes no findings about buying or selling securities, Section 523(a)(19)(A)(ii) does not apply.

Plaintiff's opposition brief focused primarily on whether Defendant engaged in common law fraud and gave little attention to whether the transactions at issue were in connection with the purchase or sale of securities.  First, Plaintiff claims that Defendant admitted he bought and sold securities as part of his investment in ZeekRewards.  Defendant, however, does not admit this; he affirmatively denies this claim and argues the opposite in his Motion.

---

[80] For these same reasons, Plaintiff's evidence and argument about Defendant's use of his son's name and social security number to open a second ZeekRewards account, which resulted in a judgment against Defendant's son, are without merit.  It is all irrelevant because the judgment is against Defendant's son, and Section 523(a)(19) requires that the debt at issue result from a judgment against the <u>debtor</u>.

Second, Plaintiff asserts that the majority of fraudulent transfers received by Defendant originated from the Ponzi scheme. Plaintiff fails to explain how this shows that the underlying transactions were in connection with the purchase or sale of securities. The arguments on this point consist of conclusory statements and attorney argument, and Plaintiff has consistently been unable to articulate how the transactions fell within the Bankruptcy Code's definition of a security.

Third, at the conclusion of oral argument held on August 10, 2021, Plaintiff referenced certain electronic investment contracts between Defendant and ZeekRewards that may have been part of the Receiver's findings in the Clawback Action, but were not in the record in this adversary proceeding. The Court continued the hearing to allow Plaintiff time to submit the alleged investment contracts and for the parties to submit any other evidence relating to the issue of whether the underlying transactions involved the buying or selling of securities. This was not done. Instead, Plaintiff submitted the Affidavit, which repeats much of the same information contained in the Complaint and Plaintiff's opposition brief. There is no evidence showing that the transactions at issue were in connection with the purchase or sale of securities. The Affidavit refers to the complaint in the SEC Action, the Summary Judgment Order and Final Judgment, and the Receiver's ledger showing Defendant's payments into and winnings from the Ponzi scheme.

The only new document attached to the Affidavit is an expert report prepared for the Receiver in the Clawback Action.[81] Setting aside the evidentiary issue of lack of foundation, the expert report fails to establish that the transactions were in connection with the purchase or sale of securities. The expert report focused on identifying "net winners" from the Ponzi scheme, and

---

[81] Emery Aff. Ex. 1.

described the transfers in terms of commissions, cash payments, and transfers of funds, and only sporadically in terms of buying or selling securities.

There is nothing in the Summary Judgment Order stating that Defendant committed a securities violation or that the underlying fraudulent transfers were in connection with the purchase or sale of any securities. The Summary Judgment Order is an order on a fraudulent transfer action. If it concerned a securities violation, the transactions would have been voidable in their entirety. Defendant and other Net Winner Class members would have been required to return all the funds they derived from the Ponzi scheme, not just net winnings. The Final Judgment is for Defendant's net winnings, not for the full amount he received from the Ponzi scheme. The Summary Judgment Order and Final Judgment are based on fraudulent transfers under the NCUFTA and do not indicate that the transfers involved a security or were in connection with the buying or selling of securities. Thus, Section 523(a)(19)(A)(ii) does not apply.

## CONCLUSION

Although Plaintiff attempts to tie the Clawback Action to the SEC Action, Defendant's Final Judgment debt arises from the ClawBack Action and is for a violation of the NCUFTA, not any securities laws. The Complaint does not allege that Defendant had a judgment entered against him finding that he violated any securities laws, which is required for the debt to be nondischargeable under Section 523(a)(19)(A)(i).

Plaintiff failed to introduce any evidence showing that the transactions at issue were in connection with the purchase or sale of securities, and nothing in the Summary Judgment Order or Final Judgment holds that Defendant violated securities laws or that the underlying

transactions involved the buying or selling of securities.  Section 523(a)(19)(A)(ii), therefore, does not apply.

For these reasons and the reasons stated above, Defendant's Motion is granted and Plaintiff's request for entry of summary judgment in its favor is denied.

## CONCLUSIONS OF LAW

1. This adversary proceeding is a core proceeding under 11 U.S.C. § 157(b)(2)(A) & (I).

2. Venue is proper before the Court under 28 U.S.C. §§ 1408 & 1409.

## ORDER

**IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment is GRANTED.

2. Plaintiff's request for entry of summary judgment in its favor is DENIED.

3. Judgment in favor of Defendant will be entered on Count I of the Complaint.

LET JUDGMENT BE ENTERED ACCORDINGLY.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge